FILED
U.S. DIST COURT
MIDDLE DIST. OF LA

2006 MAY -8 P 2: 34

SIGN_____
BY DEPUTY CLERK

# *United States Court of Appeals*

FIFTH CIRCUIT
OFFICE OF THE CLERK

CHARLES R. FULBRUGE III
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

---

NOTICE: The clerk's office is moving permanently to 600 S. Maestri Place, New Orleans, LA 70130 in **June, 2006**. All correspondence expected to arrive at the court on or after **April 24, 2006** must be sent to this address.

---

April 25, 2006

Mr Lawrence Talamo, Clerk
Middle District of Louisiana, Baton Rouge
United States District Court
777 Florida Avenue
Room 139
Baton Rouge, LA 70801

      No. 04-31210 USA v. Edwards
          USDC No. 3:98-CR-165-1
                   3:04-CV-105

      No. 04-31212 USA v. Martin
          USDC No. 3:98-CR-165-4
                   3:04-CV-106

      No. 04-31219 USA v. Edwards
                   3:98-CR-165-2
                   3:04-Cv-107

Enclosed, for the district court only, is a certified copy of the judgment issued as the mandate.

Enclosed, for the district court only, is a copy of the court's opinion.

Record/original papers/exhibits to be returned.

        Sincerely,

        CHARLES R. FULBRUGE III, Clerk

      By: *Dawn D. Victoriano*
            Dawn D. Victoriano, Deputy Clerk
            504-310-7717

cc: (letter only)
    Honorable Frank J Polozola

Honorable Ralph E Tyson
Ms Amy M Adelson
Mr Michael S Fawer
Mr J Michael Small
Mr Stephen A Higginson
Mr Servando C Garcia III

MDT-1

United States Court of Appeals
Fifth Circuit

F I L E D

March 1, 2006

Charles R. Fulbruge III
Clerk

# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

---

No. 04-31210

---

D.C. Docket No. 3:98-CR-165-1
3:04-CV-105

UNITED STATES OF AMERICA

               Plaintiff - Appellee

   v.

EDWIN EDWARDS

              Defendant - Appellant

Appeal from the United States District Court for the
Middle District of Louisiana, Baton Rouge.

Before KING, BARKSDALE, and PRADO, Circuit Judges.

J U D G M E N T

This cause was considered on the record on appeal and was
argued by counsel.

It is ordered and adjudged that the judgment of the District
Court is affirmed.

ISSUED AS MANDATE: **APR 2 5 2006**

A true copy
Test
Clerk, U. S. Court of Appeals, Fifth Circuit
By _____
Deputy
New Orleans, Louisiana   APR 2 5 2006

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 1, 2006

Charles R. Fulbruge III
Clerk

# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

---

No. 04-31212

---

D.C. Docket No. 3:98-CR-165-4
3:04-CV-106

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

ANDREW MARTIN

Defendant - Appellant

Appeal from the United States District Court for the
Middle District of Louisiana, Baton Rouge.

Before KING, BARKSDALE and PRADO, Circuit Judges.

J U D G M E N T

This cause was considered on the record on appeal and was
argued by counsel.

It is ordered and adjudged that the judgment of the District
Court is affirmed.

ISSUED AS MANDATE:

A true copy
Test
Clerk, U. S. Court of Appeals, Fifth Circuit
By
Deputy
New Orleans, Louisiana    APR 2 5 2006

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 1, 2006

Charles R. Fulbruge III
Clerk

# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

---

No. 04-31219

---

D.C. Docket No. 3:98-CR-165-2
3:04-CV-107

UNITED STATES OF AMERICA

        Plaintiff - Appellee

        v.

STEPHEN EDWARDS

        Defendant - Appellant

Appeal from the United States District Court for the
Middle District of Louisiana, Baton Rouge.

Before KING, BARKSDALE and PRADO, Circuit Judges.

J U D G M E N T

This cause was considered on the record on appeal and was
argued by counsel.

It is ordered and adjudged that the judgment of the District
Court is affirmed.

ISSUED AS MANDATE:

A true copy
Test

Clerk, U.S. Court of Appeals, Fifth Circuit

By _____
Deputy

New Orleans, Louisiana

APR 2 5 2006

United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 1, 2006**

Charles R. Fulbruge III
Clerk

REVISED MARCH 30, 2006

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

04-31210

---

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

EDWIN EDWARDS

Defendant - Appellant

---

04-31212

---

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

ANDREW MARTIN

Defendant - Appellant

---

04-31219

---

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

STEPHEN EDWARDS

Defendant - Appellant

---

Appeals from the United States District Court
for the Middle District of Louisiana, Baton Rouge

---

Before KING, BARKSDALE and PRADO, Circuit Judges.

KING, Circuit Judge:

In this consolidated appeal, appellants Edwin Edwards, Stephen Edwards, and Andrew Martin challenge the district court's denial of their motions to vacate their sentences pursuant to 28 U.S.C. § 2255 and the district court's denial of an evidentiary hearing to determine whether the government withheld exculpatory evidence during their criminal trial in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). They also appeal the district court's denial of their motions for leave to amend their § 2255 motions after the one-year statute of limitations had expired to add a constitutional claim in light of <u>United States v. Booker</u>, 543 U.S. 220 (2005). For the reasons stated below, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Criminal Proceedings

Four-term Louisiana Governor Edwin Edwards, his son Stephen Edwards, and his executive assistant Andrew Martin (collectively, "Appellants"), along with several of their associates, were indicted on thirty-four federal counts by superseding indictments on August 4, 1999, for their roles in a number of illegal activities designed to profit from awarding riverboat gambling

-2-

licenses while Edwin Edwards was governor.  The superseding
indictments alleged that Appellants had conspired in five
separate "schemes" to extort money from individuals who had
applied to the Louisiana Riverboat Gaming Commission for a
limited number of licenses to operate riverboat casinos along
Louisiana's Gulf Coast and Lake Charles.  In exchange for cash
bribes, Appellants promised to use Governor Edwards's influence
with the Riverboat Gaming Commission to help applicants obtain
preliminary approval for the riverboat gambling licenses they
sought; for those applicants who refused to pay, Appellants
threatened to make obtaining a license impossible.  Appellants
then attempted to launder the extorted money to cover up their
criminal activities.  At their arraignments on August 24, 1999,
Appellants entered pleas of not guilty.

On May 9, 2000, after a four-month trial in the United
States District Court for the Middle District of Louisiana, the
jury returned its verdict.  Appellants were convicted of, inter
alia, violating the Racketeer Influenced and Corrupt
Organizations Act ("RICO"), RICO conspiracy, extortion,
conspiracy to commit extortion, wire and mail fraud, conspiracy
to commit wire and mail fraud, and conspiracy to commit money
laundering.

On January 8, 2001, Appellants were sentenced under the
United States Sentencing Guidelines.  Governor Edwards was

-3-

sentenced to 120 months and Stephen Edwards was sentenced to 84 months, and they were fined $250,000 and $60,000, respectively. Andrew Martin received 68 months and a $50,000 fine. A forfeiture order in the amount of $1.8 million was entered against each appellant. While all three sentences were within the Guidelines, they included enhancements for the amount of intended loss, and Governor Edwards's and Stephen Edwards's sentences also included enhancements for their roles in the offenses.

Appellants appealed their convictions and sentences to this court, which affirmed the district court's judgment on August 23, 2002. United States v. Edwards, 303 F.3d 606, 647 (5th Cir. 2002). This court subsequently denied Appellants' petition for rehearing en banc. United States v. Edwards, 51 F. App'x 485 (5th Cir. 2002). On February 24, 2003, the Supreme Court denied Governor and Stephen Edwards's petition for writ of certiorari. Edwards v. United States, 537 U.S. 1192 (2003). The Court denied Andrew Martin's petition for writ of certiorari on March 3, 2003. Martin v. United States, 537 U.S. 1240 (2003).

**B.    Post-Conviction Proceedings**

**1.    Section 2255 Proceedings**

On February 18, 2004, Appellants timely filed in the United States District Court for the Middle District of Louisiana cross-incorporated post-conviction motions to vacate their sentences

-4-

under 28 U.S.C. § 2255, alleging six separate grounds for relief and requesting an evidentiary hearing. Two of these grounds, which are now before this court on appeal, alleged that during Appellants' trial the government withheld impeachment evidence relating to two of its key witnesses, Robert Guidry and John Brotherton, in violation of Appellants' due process rights under Brady, 373 U.S. 83.

### a) Robert Guidry's Plea Agreement

In their § 2255 motions, Appellants asserted that the government violated their due process rights under Brady when it concealed information regarding the plea agreement of Louisiana businessman Robert Guidry, a government witness who had testified against Appellants pursuant to a grant of immunity. Appellants further maintained that Guidry gave false testimony concerning the scope of his plea agreement and that the government failed to correct it in violation of Napue v. Illinois, 360 U.S. 264, 270 (1959).

Appellants asserted that at their trial, the government relied heavily on Guidry's testimony to convict Appellants on counts related to the so-called "Treasure Chest Scheme." Guidry, the owner of the Treasure Chest Riverboat Casino, testified that in 1994 he had agreed to pay Appellants $100,000 per month in exchange for a license hearing before the Riverboat Gaming Commission. Guidry received a license and, after Governor

-5-

Edwards left office in 1996, began making the monthly cash payments of $100,000. Guidry testified that between February 1996 and April 1997 he paid a total of $1.4-$1.5 million to Appellants.

Guidry gave this testimony in exchange for immunity from further prosecution pursuant to a written plea agreement with the federal government. Per the agreement, at his October 16, 1998, arraignment, Guidry pleaded guilty to one count of conspiracy to commit extortion related to the "Treasure Chest Scheme" in the United States District Court for the Middle District of Louisiana. The agreement also required that he forfeit $3 million and pay $250,000 in restitution and $250,000 in fines, capping his total financial liability to the federal government at $3.5 million.[1]  In addition, Guidry received state immunity in an October 15, 1998, letter to Eddie Jordan, the United States Attorney for the Eastern District of Louisiana, signed by East Baton Rouge Parish District Attorney Doug Moreau. In this letter, Moreau promised that he would "defer to federal prosecution in the matter [and] grant [Guidry] immunity for crimes he may have committed concerning the Louisiana Riverboat Gaming Industry and specifically the Treasure Chest riverboat

---

[1]     Under the terms of the plea agreement, Guidry was to pay the $250,000 in restitution to be distributed by the court at sentencing to parties who could show that they suffered damages as a result of Guidry's conduct.  See Def. § 2255 Exh. tab 1 at 2.

-6-

casino." Def. § 2255 Exh. tab 2. Guidry's plea agreement specified that "the statements set forth above represent the entire agreement with the government, any prior oral discussions or written letters do not affect this agreement." Def. § 2255 Exh. tab 1 at 4. The government produced Guidry's written plea agreement and the Moreau letter to Appellants prior to the beginning of Appellants' criminal trial.

On October 7, 1999, the Louisiana Attorney General, on behalf of the state of Louisiana, filed a civil suit in state court against Guidry. The state sought damages arising from Guidry's illegal dealings with Appellants, including all of the profits resulting from Guidry's breach of fiduciary duty and the value of his gaming license. Shortly before the beginning of Appellants' criminal trial, the district court stayed the state action against Guidry pending the outcome of Appellants' trial. During Appellants' trial, Guidry testified that, although his financial liability to the federal government was capped at $3.5 million, his overall financial exposure was possibly much greater because he had "two or three lawsuits that's [sic] pending against all this money." 120 R. at 214. After Appellants' trial and convictions, Guidry was sentenced in federal court consistent with his plea agreement on January 17, 2001.[2]

---

[2]    At the sentencing hearing, the state of Louisiana sought a restitution award out of the $250,000 that Guidry had paid to the court pursuant to his plea agreement, arguing a

-7-

Soon thereafter, the state of Louisiana proceeded with its civil suit against Guidry. In support of his motion for a preliminary injunction, Guidry's defense attorneys argued that the immunity provisions set forth in the Moreau letter should be construed under Louisiana law to include immunity from state civil suit for money damages as well as from state criminal prosecution. At a June 26, 2003, hearing on the motion, Guidry's attorneys attempted to elicit testimony from the federal and state prosecutors involved in the plea agreement to support this civil immunity theory. The state court judge denied the preliminary injunction on the ground that, given the testimony from the hearing, "there was simply no meeting of the minds" regarding an agreement to extend civil immunity to Guidry. Def. § 2255 Exh. tab 16 at 5.

Despite the state court's finding, Appellants, citing newly discovered evidence of a <u>Brady</u> violation, built on Guidry's civil immunity theory a year later during their § 2255 proceedings. They argued that Guidry's plea agreement went beyond the contents of the written agreement and the Moreau letter because Guidry had also entered into an unwritten, undisclosed deal with federal prosecutors and the state of Louisiana immunizing Guidry from financial liability to the state arising from crimes he may have

---

breach of fiduciary duty theory similar to the theory of recovery articulated in Louisiana's state court suit pending against Guidry at the time.

-8-

committed in connection with the Treasure Chest Casino. Appellants further suggested that a federal judge approved this separate agreement at Guidry's 1998 arraignment in a secret, off-the-record chambers conference with Guidry, his lawyers, and the prosecutors.

### b) John Brotherton's Book Deal

In their § 2255 motions, Governor and Stephen Edwards ("the Edwardses")[3] also contended that the government violated their due process rights under <u>Brady</u> when it failed to disclose that, during the trial, cooperating witness John Brotherton had been writing a book about his role in the Edwards case. The Edwardses asserted that Brotherton, a Vice President for the Players Casino Company who testified pursuant to a grant of immunity, was a crucial witness in the government's "Players Scheme" case because he and Richard Shetler, an Edwards family friend and paid consultant for Players, were the only two witnesses to testify to extortion connected with the Players Casino.

The Edwardses argued that the government's failure to disclose that Brotherton was writing a book deprived them of impeachment evidence concerning Brotherton's purported financial stake in the outcome the trial. Moreover, the Edwardses

---

[3] Appellant Andrew Martin was not named in the "Players Scheme" counts of the indictment and thus was not found guilty of the related racketeering counts that Brotherton's testimony addressed.

-9-

contended that the contents of the book revealed further
exculpatory evidence that the government had failed to disclose
in violation of Brady, including the existence of tape recordings
obtained from a wiretap of an undercover informant.

### c) The District Court's Ruling

The district court denied Appellants' § 2255 motions and
their request for an evidentiary hearing on November 3, 2004.
The court found that there was no evidence that the government
had concealed the extent of Guidry's financial immunity in
violation of Appellants' due process rights because (1) Guidry
testified extensively on cross-examination about the terms of his
plea agreement, including the limitations on his federal
forfeiture, his understanding of his immunity deal with the state
of Louisiana, and his plea agreement's relationship to the
pending collateral civil suits; (2) Appellants were able to
impeach Guidry effectively on the financial liability limitation
contained in his written plea agreement, and even if the
government had disclosed its purported belief that the state
lawsuit against Guidry was barred because of his financial
immunity deal, such information "would have been at best,
cumulative," and at worst, "not material"; and (3) Appellants'
"argument that the plea agreement contained an undisclosed (and
unwritten) clause which barred the State from seeking monetary
damages from Guidry is speculative and unsupported" by the

-10-

evidence. Ruling on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, No. 98-165-C, at 7-9 (Nov. 3, 2004) [hereinafter "Dist. Ct. § 2255 Ruling"]. Because the court found no evidence of an undisclosed financial immunity deal, it also rejected Appellants' contention that Guidry gave false testimony at trial that the government failed to correct.

Likewise, the district court rejected Appellants' assertion that the government's failure to disclose John Brotherton's book deal violated Appellants' due process rights under Brady. Because "Brady requires that materiality be determined in light of all evidence at trial," the court examined the totality of the evidence supporting the convictions for the "Players Scheme." Id. at 28-29. The court found that ample evidence besides Brotherton's testimony supported the convictions, and "[i]t is rank speculation to conclude that, compared with this incriminating evidence, any marginally more impeaching evidence concerning Brotherton could have created in the jurors' minds reasonable doubt as to the [Appellants'] guilt." Id. at 29.

Appellants filed notices of appeal of the district court's ruling and motions for a certificate of appealability ("COA") on November 30, 2004.

### 2. Appellants' Motions to Amend Their § 2255 Motions

Appellants did not challenge the constitutionality of their sentences in the § 2255 motions that they filed on February 18,

-11-

2004. On June 24, 2004, the United States Supreme Court handed down Blakely v. Washington, 542 U.S. 296 (2004), striking down a state sentencing guideline scheme that allowed sentence enhancements based on facts found by a judge and not a jury. Anticipating that the Supreme Court might extend Blakely to the federal Sentencing Guidelines, Appellants filed motions for leave to amend their § 2255 motions on July 1, 2004, outside of the § 2255, ¶ 6, one-year limitation period. In a ruling dated September 4, 2004, the district court denied Appellants' motions based solely on United States v. Pineiro, 377 F.3d 464 (5th Cir. 2004), vacated, 543 U.S. 1101 (2005), which held that Blakely did not invalidate the federal Sentencing Guidelines. Appellants filed notices of appeal and motions for a COA on November 30, 2004. Shortly thereafter, on January 12, 2005, the Supreme Court handed down Booker, 543 U.S. 220, which applied Blakely to hold the mandatory application of the federal Sentencing Guidelines unconstitutional.

### 3. Certificate of Appealability

On December 13, 2004, the district court granted each Appellant a COA pursuant to 28 U.S.C. § 2253(c)(1)(B), finding that Appellants had demonstrated a substantial showing of the denial of a constitutional right on the following issues:

> 1. Whether the [Appellants'] due process rights were violated by the government's failure to disclose a promise to cooperating witness Robert Guidry that he would not be liable in money damages to the State of

-12-

Louisiana.

2. Whether the [Appellants'] due process rights were violated by the government's failure to correct Robert Guidry's trial testimony that he faced financial exposure from the lawsuits pending against him and from the denial of an evidentiary hearing on this issue.

3. Whether the [Appellants'] due process rights were violated by the government's failure to disclose exculpatory, impeachment material relating to cooperating witness John Brotherton and from the denial of an evidentiary hearing on this issue.

4. Whether the [Appellants] should be permitted to raise a constitutional claim pursuant to <u>Blakely v. Washington</u>.

Appellants now request that this court reverse the district court's judgment and vacate their convictions, or, in the alternative, remand for an evidentiary hearing.

## II. DISCUSSION

### A.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), our review is limited to the issues enumerated in the COA.[4]  28 U.S.C. § 2253(c)(1).  In reviewing a district court's denial of a motion to vacate sentence under § 2255, we review questions of fact for clear error and questions of law de novo.  <u>United States v. Chavez</u>, 193 F.3d 375, 378 (5th Cir. 1999).  Claims that the government violated <u>Brady v. Maryland</u> are mixed questions of law and fact that we review de novo.  <u>United</u>

---

[4]    AEDPA applies because Appellants filed their § 2255 motions on February 18, 2004, well after AEDPA's effective date of April 24, 1996.  <u>See</u> <u>United States v. Williamson</u>, 183 F.3d 458, 461 n.2 (5th Cir. 1999).

-13-

States v. Hughes, 230 F.3d 815, 819 (5th Cir. 2000); Felder v. Johnson, 180 F.3d 206, 211 (5th Cir. 1999). We review for abuse of discretion a district court's denial of an evidentiary hearing, which we will grant only "[i]f the [Appellants] produce[] independent indicia of the likely merit of [their] allegations." United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998); see also United States v. Auten, 632 F.2d 478, 480 (5th Cir. 1980) (noting that mere conclusory allegations are not sufficient to support a request for an evidentiary hearing). A district court's denial of a motion to amend a § 2255 motion is also subject to review for abuse of discretion. United States v. Saenz, 282 F.3d 354, 356 (5th Cir. 2002).

**B.   Analysis**

### 1.   The Alleged Brady Violations

Under Brady, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The Supreme Court subsequently extended this principle to impeachment evidence, holding that "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." Giglio v. United States, 405 U.S. 150, 154 (1972) (quoting Napue, 360 U.S. at

-14-

269); see also United States v. Bagley, 473 U.S. 667, 676-77 (1985) (rejecting any distinction between exculpatory and impeachment evidence for Brady purposes). To establish a Brady violation, Appellants must prove that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant because it was either exculpatory or impeaching; and (3) the evidence was material. United States v. Sipe, 388 F.3d 471, 477 (5th Cir. 2004); see also Strickler v. Greene, 527 U.S. 263, 281-82 (1999); Kyles v. Whitley, 514 U.S. 419, 433-38 (1995).

### a) Robert Guidry's Plea Agreement

Appellants allege that the government violated Brady with regard to cooperating witness Robert Guidry because (1) in addition to a grant of immunity from state prosecution, Guidry's plea deal included a secret, unwritten promise of immunity from any future civil suit for damages that the state of Louisiana might bring against him; (2) the deal was confected without Appellants' knowledge by federal prosecutors, the Baton Rouge district attorney's office, and Guidry's defense lawyers and then secretly approved by a federal judge; and (3) the government failed to disclose the deal to Appellants prior to trial, depriving them of valuable impeachment evidence.

Our review of the record reveals no factual support for this improbable scenario; instead, the record affirmatively

-15-

contradicts Appellants' arguments. To support their theory, Appellants rely primarily on the transcript of a 2003 state court hearing on Guidry's request for a preliminary injunction of the state lawsuit filed against him. Appellants maintain that the testimony that Guidry's attorneys elicited from federal and state prosecutors who were parties to the Guidry plea negotiations indicates that there was indeed a hidden promise limiting Guidry's state financial liability. To the contrary, the record reflects that even Guidry's attorneys--who Appellants claim negotiated the alleged deal with the state and federal prosecutors--never argued or attempted to insinuate during questioning that Guidry had agreed to a secret deal that included civil immunity. Rather, they merely argued that the state immunity provisions set forth in the Moreau letter should be construed under Louisiana law to include immunity from the state civil suit.[5] The theory alleging an unwritten side deal was

---

[5]    Guidry's attorneys did not argue the existence of a hidden deal in their January 31, 2003, Memorandum in Support of Request for Preliminary Injunction:

> Unquestionably, the State could not prosecute Guidry criminally under the immunity granted to him. The question here is whether the immunity agreement bars the state from prosecuting this so-called civil lawsuit on the basis of his immunized information and testimony. We submit firstly that the State is barred from using the immunized information and testimony under Louisiana immunity law, and alternatively, it is barred because the lawsuit in reality is an attempt to obtain restitution, a criminal penalty, under the guise of a civil claim. Allowing this suit to proceed on the basis of the immunized information and testimony would result in an

-16-

articulated for the very first time in Appellants' § 2255 motions, six years after Guidry entered into his written plea agreement and more than one year after Guidry's state court preliminary injunction hearing.

Moreover, at least two of the attorneys who allegedly concocted the secret plea agreement--East Baton Rouge Parish District Attorney Doug Moreau and Assistant United States Attorney Fred Harper--testified under oath at the hearing that no mutual understanding or provision limiting Guidry's state financial liability ever existed. Indeed, at the time that Moreau extended state immunity "for crimes [Guidry] may have committed" in return for Guidry's cooperation with federal authorities, the state civil lawsuit against Guidry had not been filed, and it is clear from the record that none of the actors involved even contemplated that the state would pursue such a lawsuit. According to Moreau, "I had never even thought about

---

erroneous interpretation of Louisiana's immunity law and an improper application of federal and state principles of criminal restitution.
Def. § 2255 Exh. tab 11 at 4.

Likewise, Guidry's attorneys did not assert that their client had agreed to such a deal in an affidavit submitted in support of their motion for a preliminary injunction. The most they alleged was that Guidry "still refused to enter a plea and cooperate with the government unless he could be assured that the State of Louisiana would defer its interest in the case to the federal government and would agree to limit its financial recovery to the amount specified in the federal proceeding." Even this statement stops short of alleging the actual existence of an agreement limiting Guidry's state financial exposure. Def. § 2255 Exh. tab 12 at 2.

-17-

Case 3:98-cr-00165-RET   Document 2118   05/08/06   Page 22 of 29

[civil immunity] before this lawsuit. . . . I did not contemplate the use immunity or transactional immunity in regard to civil proceedings. That . . . never crossed my mind. . . . I didn't even know of such a concept as civil immunity." Def. § 2255 Exh. tab 15 at 42-44. Likewise, Harper testified that side agreements outside the scope of the written plea agreement would have been prohibited and that no one involved had anticipated that the state of Louisiana would subsequently bring a civil suit against Guidry:

> [N]ever, in my experience, have I ever had a situation where unbeknownst to me at the time this plea agreement was entered into, and I believe at the time Mr. Guidry pled guilty, . . . the state of Louisiana, or anybody else for that matter, sued a cooperating defendant in a criminal case. . . . Never, in any case in the 28 years I've been doing this, have I ever seen the state sue a cooperating defendant civilly. . . . [T]he thought of a civil action brought by the state of Louisiana against this cooperating defendant never entered anybody's mind.

Id. at 67-68.[6]

Finally, Appellants contend that a federal judge colluded with the federal prosecutors and Guidry's attorneys to approve the alleged civil immunity agreement at Guidry's arraignment in an in camera, "secret proceeding." Appellants offer no support

---

[6] Resting its decision on this testimony, the state court ultimately denied Guidry's motion for a preliminary injunction, stating, "[c]onsidering the testimony of the witnesses at the hearing, it is clear that there was simply no meeting of the minds regarding any civil liability of Mr. Guidry. . . . The court reads [the Moreau letter's] granting of immunity to apply to criminal culpability only and not to any civil matters." Def. § 2255 Exh. tab 16 at 5.

-18-

for this serious allegation other than pointing to a short, off-the-record chambers conference between the judge and the attorneys that happened during Guidry's arraignment and speculating that something illicit occurred during the recess. This contention is wholly without merit, particularly because this same judge later rejected the argument that the federal plea agreement necessarily limited Guidry's financial liability to the state during the restitution portion of Guidry's sentencing. <u>See</u> Def. § 2255 Exh. tab 10 at 18-19.

Our review of the record leaves us with the firm conviction that there was no clandestine, collateral plea agreement protecting Guidry from state financial liability. Appellants' contentions are speculative and find no support in Guidry's plea agreement, the Moreau immunity letter, the transcripts of proceedings from the state's lawsuit against Guidry, or the record on appeal.[7] Because "[t]he prosecution has no duty to turn over to the defense evidence that does not exist," we reject

---

[7] For the same reasons, the district court did not abuse its discretion when it denied Appellants' request for an evidentiary hearing. Appellants have failed to provide "independent indicia" of the likely merits of their allegations and instead rely on speculation based on a misreading of the record, which is insufficient to warrant an evidentiary hearing. <u>See</u> <u>Cervantes</u>, 132 F.3d at 1110; <u>Auten</u>, 632 F.2d at 480 ("[C]onclusory assertions do not support the request for an evidentiary hearing.").

-19-

Appellants' <u>Brady</u> claims with respect to Robert Guidry.[8]  <u>Brogdon</u>
<u>v. Blackburn</u>, 790 F.2d 1164, 1168 (5th Cir. 1986) (per curiam);
<u>see also</u> <u>United States v. Rivera Rangel</u>, 396 F.3d 476, 486 n.11
(1st Cir. 2005) (reversing the district court's grant of a new
trial based on an alleged <u>Brady</u> violation resulting from the
suppression of a cooperating witness's plea agreement, noting
that "the district court's finding that [the witness] entered
into a plea agreement was entirely at odds with the only
evidence--which was in the form of sworn statements--that had
been offered on the subject, and as a result, it was
unjustified"); <u>Todd v. Schomig</u>, 283 F.3d 842, 849 (7th Cir. 2002)
(addressing a prisoner's claim that the government suppressed the
existence of a cooperating witness's plea agreement and holding,
"Todd cannot prove an agreement existed. . . . Without an
agreement, no evidence was suppressed, and the state's conduct,
not disclosing something it did not have, cannot be considered a
<u>Brady</u> violation").

> **b)  John Brotherton's Book Deal**

The Edwardses also contend that the government violated

---

[8]     Accordingly, we need not address the materiality vel
non of the allegedly suppressed evidence.  Likewise, because the
record reveals neither that a civil immunity agreement concerning
Guidry existed, nor that the government was aware that Guidry
might have believed that such a deal existed, we need not address
Appellants' related claim that the government violated their due
process rights in violation of <u>Napue</u>, 360 U.S. 264, by failing to
correct Guidry's allegedly false testimony.

their _Brady_ rights by failing to disclose: (1) that cooperating witness John Brotherton was writing a book during their trial; (2) Brotherton's allegation in the book that the government secretly recorded a meeting between Brotherton and government informant Patrick Graham, which the government subsequently failed to disclose to the Edwardses; and (3) a fabricated memorandum that Brotherton claims he prepared at one point to secure a job with a tribal casino, which he also discusses in his book.

Even if the government had known that Brotherton was writing a book and had failed to provide the Edwardses with this information--and it is unclear from the record whether this was even the case[9]--the Edwardses' claim fails because the evidence was not material for _Brady_ purposes. "'[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would

---

[9] The Edwardses' assertions that the government even knew of Brotherton's book deal are largely speculative. The Edwardses cite the book's preface, in which Brotherton congratulates the government on its successful prosecution of Governor Edwards, for the proposition that "the prosecutors were _apparently_ aware of" both the existence and the contents of Brotherton's book. Edwards Br. at 46 (emphasis added). Moreover, to support their claim, the Edwardses merely assert that "the government has not denied" knowledge of this evidence. _Id._ at 50. This argument ignores that the Edwardses, as the parties alleging a _Brady_ violation, have the burden of establishing all three prongs of the _Brady_ test. _See, e.g._, _Sipe_, 388 F.3d at 477 ("To establish a _Brady_ violation, a _defendant_ must make three showings . . . .") (emphasis added).

-21-

have been different.'" Rector v. Johnson, 120 F.3d 551, 562 (5th
Cir. 1997) (quoting Bagley, 473 U.S. at 682 (1985)).
Specifically, we must determine whether the allegedly suppressed
evidence, considered collectively and in light of all of the
evidence at trial, could reasonably be taken to put the entire
case in a different light so as to "'undermine[] confidence in
the outcome of the trial.'" Kyles, 514 U.S. at 434 (quoting
Bagley, 473 U.S. at 678); see also Duncan v. Cain, 278 F.3d 537,
539 (5th Cir. 2002).

The Edwardses speculate that the fact that Brotherton was
writing a book and the book's contents would have been
sufficiently impeaching to undermine confidence in the jury
verdict; however, taken in context, this evidence would have had
at best only a marginal impact on the government's case against
the Edwardses. Brotherton was not the only witness to testify
against the Edwardses regarding the "Players Scheme," nor was he
the most important. The trial record reflects that Richard
Shetler, another Players employee and long-time Edwards family
friend, provided extensive, damning testimony about the
Edwardses' dealings with the casino. The government further
bolstered this testimonial evidence with copious exhibit evidence
and inculpatory taped conversations.

Given the amount of incriminating evidence other than
Brotherton's testimony that the government presented, the

-22-

allegedly suppressed impeachment evidence is simply too insignificant to undermine confidence in the jury's verdict. <u>See</u> <u>Kopcynski v. Scott</u>, 64 F.3d 223, 226-27 (5th Cir. 1995) (rejecting a habeas petitioner's <u>Brady</u> claim where the suppressed impeachment evidence was immaterial in light of the other, corroborated testimony and physical evidence supporting petitioner's conviction); <u>see also</u> <u>Pippin v. Dretke</u>, 434 F.3d 782, 789 n.7 (5th Cir. 2005) ("A claim that is largely speculative with respect to the effect of the allegedly exculpatory evidence on the jury's ultimate determination of guilt or innocence cannot support a <u>Brady</u> violation."). We thus reject the Edwardses' <u>Brady</u> claim with respect to John Brotherton.[10]

---

[10]     Although, in the alternative, the Edwardses urge us to grant an evidentiary hearing to explore their theory further, we decline to do so. Due to the speculative and conclusory nature of the Edwardses' allegations with respect to both the suppression and materiality <u>Brady</u> prongs, such a hearing would serve as nothing more than a fishing expedition. <u>See</u> <u>Cervantes</u>, 132 F.3d at 1110 (noting that an evidentiary hearing is warranted only "[i]f the [Appellants] produce[] independent indicia of the likely merit of [their] allegations"); <u>Auten</u>, 632 F.2d at 480 (denying an evidentiary hearing because the conclusory allegations set forth were not sufficient to support a request for an evidentiary hearing). We have also denied evidentiary hearings to explore similarly unsupported claims in state habeas proceedings under § 2254, applying the same standard. <u>See</u> <u>Hughes v. Johnson</u>, 191 F.3d 607, 629 (5th Cir. 1999) (denying an evidentiary hearing to investigate a "purely speculative" <u>Brady</u> claim); <u>Johnson v. Scott</u>, 68 F.3d 106, 112 (5th Cir. 1995) ("The [habeas] petitioner must set forth specific allegations of fact, not mere conclusory allegations."); <u>Ellis v. Lynaugh</u>, 873 F.2d 830, 840 (5th Cir. 1989) ("The court need not blindly accept speculative and inconcrete claims as the basis upon which to

-23-

**2. Appellants' Booker Claims**

Finally, Appellants argue that the district court erred in denying their motions for leave to amend their § 2255 motions in light of Booker, 543 U.S. 220, and Blakely, 542 U.S. 296. Although they acknowledge that they did not challenge the constitutionality of their sentences on direct appeal or in their initial § 2255 motions, Appellants argue that, in the wake of Booker and Blakely, they should now be allowed to amend their § 2255 motions to add a collateral constitutional challenge to their sentences.

This argument is foreclosed before this court by United States v. Gentry, 432 F.3d 600, 605 (5th Cir. 2005), and In re Elwood, 408 F.3d 211, 212-13 (5th Cir. 2005) (per curiam), both of which hold that the Blakely/Booker line of cases does not apply retroactively to cases on collateral review. Appellants correctly conceded in oral argument that this precedent forecloses relief before this court. They raise this issue only to preserve it for possible Supreme Court review, and we decline to consider it further.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

order a hearing.") (internal quotation marks and citation omitted).

-24-